Good morning, everyone. Before we begin, I'd like to let you know that Justice Litton is not feeling well this morning, and he will be participating fully in the case, and we'll be listening to the argument on the tapes, and we'll participate in our discussion and in the order. The clerk will call the next case. Case 3-120-887, People of the Citadel, Miami, acted by Judith Kelley v. Alejandro V. Reveles-Cordova, appailed by Brian Carroll. First three issues in my brief this morning. This was a he-said-she-said case that rested on whether the jury believed J.B.'s claim that my client assaulted her over my client's contention that the sexual relationship was consensual. The improper impeachment and consciousness of guilt evidence that was introduced against my client was therefore very prejudicial. In addition, the trial court improperly and unfairly interfered with my client's ability to present his consent dispense by preventing him from testifying to the key issue before the jury, whether or not J.B. consented to have sex with him. And for these reasons, Mr. Reveles-Cordova asked this court to reverse his convictions and remand his case for a new trial. First, it is undisputed that Reveles-Cordova's prior convictions for obstruction of justice and burglary should not have been admitted to undermine his credibility, as both convictions were over 10 years old at the time of his trial. And although he was properly impeached with a prior misdemeanor retail theft conviction, the number of prior convictions admitted as impeachment matters. As this court recognized in Peabody Hall, the more priors a defendant is impeached with, the less credible he appears to the prior theft. Like Reveles-Cordova, the defendant in Hall was impeached by multiple prior convictions. This court rejected the defendant's argument that the marginal probative value of each prior conviction decreased as additional convictions were introduced, and instead held that the multiple convictions actually increased the probative value. Thus, in this case, the state's argument that the improperly introduced prior convictions are just cumulative is unconvincing. And the type of convictions matter as well. A misdemeanor retail theft conviction is far less damning to a person's character for credibility than an obstruction of justice conviction or a burglary conviction. And these prior convictions were particularly prejudicial in this case because the case boiled down to a battle of credibility between my client and JB. JB had some credibility issues herself. Now, although she testified that my client strangled her to the point where she almost blacked out, there's no evidence of any trauma or injury to her neck or that she sought any medical help for such trauma. And she never mentioned being strangled to the first responding officers either. Also, while at trial, she testified she was on her back on the ottoman during the assault. She told Officer Switek that she was on her stomach, and an investigator testified that she told her that the assault took place on the bed. And, therefore, JB's story itself has some issues to it. And while the state argues that the state of JB's bedroom, the disheveled state of it, collaborates with her testimony, it's not inconsistent with my client's testimony either. He had innocent explanations for the state of JB's bedroom, such as the broken door that he testified was broken months earlier, the fact that his fingerprints were on the cell phone. He admitted that he handled it during the encounter. So the state, the disheveled state of JB's room was evidence of my client's guilt only to the extent that the trier of fact believed JB's version that it became in that disheveled state due to the assault. Thus, this case is directly analogous to Naylor. Now, in Naylor, the evidence against the defendant was not simply the police's testimony. They also had drugs that the parties stipulated were drugs. But that evidence wasn't evidence of the defendant's guilt unless the police's testimony that they recovered it from the defendant is believed. And that's exactly analogous here where the evidence of the disheveled state of JB's bedroom is not evidence of my client's guilt unless JB's testimony is believed. Can you tell me how the other crimes, the prior convictions, came in? They ultimately came in because they were affronted by my client's trial attorney. Okay. So the state didn't introduce the prior convictions. The client acknowledged them in his direct testimony. That's true, Your Honor, but the trial court had already ruled that those convictions would come in. When the court made that ruling, those convictions weren't more than 10 years old. No, they weren't, but at the time of the trial, they were. I'm arguing this partially under an ineffective assistance claim. The counsel should have known or had a duty to know the important dates relevant to the admissibility of the evidence. So counsel was ineffective for not re-raising the issue of whether or not these prior convictions should have come in at the time of trial. So whether this court addresses this under closely balanced plain error, as in Naylor, or as ineffective assistance, counsel, you get to the same place. It's the either improperly admitted impeachment evidence that affected the prior effect's assessment of credibility in this case, and thus may well have changed the outcome of the trial. Therefore, because of that, a remand for a new trial is warranted on this issue alone. Did you argue ineffective assistance with counsel? Can you agree? Yes, I did. And you make that argument both as to this first issue and the failure to object to the consciousness of guilt testimony? The ineffectiveness? Yes. For the Burwin police officer's testimony? Yes. Yes, counsel should have objected to officer's path as testimony that shortly after the incident he engaged in a foot chase with a person that later was identified by someone as being my client. Again, because the evidence was close in this case, there's at least a reasonable probability that the outcome would have been different had this improper evidence suggesting my client's consciousness of guilt did not come in. Pappas' testimony that someone identified the individual he chased as my client was textbooked in an admissible hearsay. It was an out-of-court statement introduced to establish its truth that Rubellas Gregorivas was the person that Pappas chased. But because his testimony did not fall under any hearsay exception, counsel had no excuse for not objecting to it. And it was particularly prejudicial because it was the only evidence introduced directly linking my client to that foot chase. In Pappas' testimony about the chase itself, I contend is unduly speculative as he never identified the person he chased as being my client. And the description, while he said he was given descriptions of the client and the vehicle, there's no evidence that was ever introduced that those descriptions were actually accurate. And the fact that the prosecution introduced the hearsay statement regarding the subsequent identification suggests they were aware of the shortcomings of Pappas' version of events and needed to shore it up. So because of that evidence shouldn't have come in, I contend his trial counsel was ineffective. And because there is a reasonable probability, given the closeness of the evidence, this court should remand on that issue as well. Finally, the trial court committed reversible error by preventing Rivera-Gutierrez from testifying that J.B. verbally consented to have sex with him. He had a right to present a defense, and evidence that J.B. consented to have sex with him was an essential element to his consent defense. Yet when he tried to present evidence directly addressing that issue, the court erroneously prevented him from doing so. Evidence that J.B. consented was admissible to show both my client's state of mind at the time, specifically that he did not knowingly force J.B. to have sex with him because he believed she was consenting, and J.B.'s state of mind, that she in fact consented. Now the state does not dispute that the evidence was admissible for these purposes. And this evidence was critical because it was the only direct evidence my client had of J.B.'s consent. While he was able to argue that she didn't physically fight him off or verbally say no, the lack of verbal or physical resistance does not constitute consent. So not being able to say yes, she verbally consented to the sex was very damaging to his ability to present his defense. Furthermore, the evidence that she consented was also impeachment contrary to the state's claim otherwise. She testified extensively about her interactions with my client during the event and repeatedly stated that she told my client no to stop and to go away. And evidence that she in fact consented to the sex would have directly impeached her on that point. And again, because this case is a battle of credibility, the impeachment of J.B. was critical for my client. And finally, the fact that the prosecutor skeptically cross-examined my client about his consent defense does in no way substitute for his ability to present his consent defense on his term. You have to consider how it looked to the jury. He testified on direct that they had a conversation during which she agreed to have sex with him. The court sustained the state's objection to that and the jury was explicitly instructed to disregard any question that the objection was sustained to. So of course they're not going to consider that at all. So then in cross-examination, when prosecutors ask him about it, he's not trying to elicit any evidence from my client. He's trying to rip them apart. So the jury, there's no way that the cross-examination of my client in any way made up for his inability to present his defense to the jury. And again, because this was a he-said-she-said case, his inability to argue that J.B. consented verbally was incredibly damaging to his case. So unless this court has any other questions? I have a couple questions on the ineffective assistance of counsel arguments that you made. Ineffective assistance of counsel I'm seeing arising in the briefs and a lot of times arises in the briefs written by defenders such as you that work out of Cook County. It seems to be becoming a catch-all, kind of like plain error as an excuse for forfeiture. And I think ineffective assistance of counsel, correct me if I'm wrong, has to be properly preserved and brought up in the trial court. Why are we able to decide whether counsel was ineffective for failing to catch the fact that these prior convictions were now more than 10 years old and the other issue that you raised based on ineffective assistance? How can we examine those issues without going outside of the record? We have to decide whether counsel had a proper trial strategy. Well, in terms of the prior convictions, they were inadmissible as a matter of law. There's no reason to go outside the record for that. What possible trial strategy could there be for allowing... So was it raised in the trial court? Did you bring this to the attention of the trial judge so it could be corrected there? That's why it's raised as ineffective assistance of trial counsel because trial counsel didn't do that. You can't preserve... So it's a double ineffective assistance. No, Your Honor. Trial counsel didn't offer the or didn't seek to exclude the other crimes evidence and in fact fronted it, as you said, and then didn't raise it in a post-trial motion? Is it double ineffective assistance? No, Your Honor. It's just single. The error is that trial counsel didn't raise this issue below. And, I mean, trial counsel can't allege its own ineffectiveness. So who's... I don't understand what counsel... And I could be wrong, and this is your opportunity to correct me. Yes. Because we can go through the trial record. There's a lot of mistakes that occur during trial, a lot of mistakes. Yes. And a trial counsel can't allege his own ineffectiveness. So since my client was represented by the same trial throughout the trial and post-trial, his first opportunity to raise his trial counsel's ineffectiveness is in the direct appeal, which I am doing now. Therefore, that's why you can't... It wasn't raised before. Possibly if a new counsel was appointed on a post-trial... Okay. All right. You've answered my question. Okay. So any further questions? I guess I'll ask the court to confer the conviction for the man for new trial. Thank you. Thank you. Ms. Kelly? Thank you. May it please the court, counsel, initially, as the people said in their brief, this is not a he said, she said case. This is not like the Naylor case that defendant relies upon. This is a case where there is a lot of extrinsic evidence that corroborates her version of what happened, none that corroborates his version of what happened. And the people at length treated the argument that it was not a he said, she said case in response to the first issue and rather than repeat it in each of the others, referred back to the first issue and would refer this court again to that. J.B.'s testimony was consistent with the physical evidence, with the photographs, with the testimony that the wood was split on the door and there were fresh paint chips and fresh wood, was consistent with the fact that he was angry and he threw the vase down on the carpet and made accusations. Her testimony was supported in many ways by the extrinsic evidence. And the Naylor case was a true he said, he said case, which was not the same as this. With regard to the improper impeachment, at the time the defendant filed his, or the people filed a motion in limine to allow the states to impeach the defendant with his prior convictions, the convictions were all timely. At the time it was argued, the convictions were timely. At the time the court decided it, and in fact at the time the trial date was set for May, the convictions were timely. The case was continued and went to trial. As it turned out, I believe it was eight days beyond the date he had been placed on supervision for those convictions. Nobody realized the fact that it was now eight days late. The defendant then, when he took the stand, fronted it, I believe was the first question asked. It was out of the way. It was never mentioned again. The people did not argue in their closing argument that the defendant had no credibility because of his prior convictions. People never mentioned it again. The only reference to those priors was at the outset of his testimony, and that was it. With regard to the argument about defendant's consciousness of guilt running from Officer Papa, I believe Officer Papa's testimony stands for itself that he was able to, he had a description of the person he was looking for.  They saw that car pull in. They saw a person get out, turn around, in the light on the porch, look at them. It matched the description. When the police got out of the car, he took off running, and they followed him, ultimately losing him. And the question asked at the end of his testimony was, I believe, just whether somebody, quote, eventually identified that person as the defendant. And Papa answered yes, it could well have been him. Because a week after this occurred, the defendant was arrested and was at the Berwyn police station because the Romeoville detective, who had been trying to find him on the night of the offense, testified that she went over on the 27th, a week later, and brought him from the Berwyn police station to Romeoville where the offense occurred. And since Papa was a Berwyn police officer, it's likely that he saw him at the station. He may have been the one who said, yep, that's the guy I was chasing. We don't know. The only question was, was he eventually identified as defendant? That is not a hearsay statement. We don't know what the basis for that knowledge was. The testimony was not improper. And with regard to the third issue that defendant has raised here today, the people's objection to the question on a hearsay basis did not interfere with his ability to present a consent defense. The people objected on a hearsay basis. Defense counsel asked for a moment to consider the issue, came back and said no argument. She never stated that it was an exception to the hearsay rule. In fact, at the post-trial motion, she argued that she was using that to impeach J.B. And as the state argued at the post-trial motion, there was no statement to impeach because J.B. had never been asked during the cross-examination, did you ever consent. Additionally, of course, counsel never told the court what statement she wanted to get in. There was no offer of proof made as to this alleged now state of mind exception hearsay. So the people's objection was properly sustained. And then, in fact, there's no question but that the jury knew that the defendant's defense was consent. And in fact, the people summarized that. This is what you're saying, that she consented to it and he said yes. So the evidence was there before the jury. He was not prevented in his ability to present a defense. He submitted a jury instruction on consent and that was allowed and that went to the jury. That was a good portion of the arguments made by the parties as well. The people would rest on their grief for the rest of their argument, and asking the court to pay particular attention to the response to the closely balanced argument made. And that's contained within the first issue. Do you have a question? No. Do you have any questions? Thank you. Mr. Kirov? Thank you, Your Honor. Two quick points. First, back to the battle of credibility issue. Again, my client had innocent explanation for all the things that the state points to as collaborating JV's testimony. So again, it goes down to whose version is more likely. As the state's claim that Pappas was probably the one who identified my client as being the person in the chase, it's just unbelievable that if that was the case, the prosecutor wouldn't have explicitly asked him that and he would have answered yes, I identified him. To think they did it in such a roundabout way is just unbelievable. And Pappas never identified him in court as that individual. Finally, within the third issue, a formal offer of proof is not necessary when the character and nature of the testimony the defense counsel intends to elicit is clear from the context. And here it is clear that counsel was eliciting from my client that they had a conversation and JV verbally consented to the sex. So the fact that there's no formal offer of proof in this case is a non-issue. So again, I ask this court to reverse my client's positions and remand the matter for a new trial. As a matter of curiosity, I have a question for you, and that is, defense counsel didn't request a lesser included instruction for simple domestic battery? Yeah. Do you think that was ineffective? I didn't brief it. At this point, I'd have to say I'm agnostic on it. If you would like supplemental briefing on the matter, I'd be happy to. I'm just fascinated with the ineffective assistance of argument issues that are coming up again and again. Where does it end? Because you didn't raise that issue here, although it's a plausible issue. Can it be raised in a post-conviction petition? And why isn't ineffective assistance of counsel better addressed in another forum rather than as the rote answer to a court decision? It just troubles me that it's coming up again and again and again, almost like an afterthought, but yet we have to wrestle with it here with a very limited record. Yeah. I think it depends on what kind of issues are being raised. I think there are quite a few ineffective assistance claims that do require out-of-record material that are better raised in a post-conviction petition. But there are some, such as in this case the improper impeachment evidence, that you don't have to go outside the record for that. You know that stuff should have come in. Since you have raised that issue and you have touched upon ineffective assistance of counsel, then does that mean any other issues related to ineffective assistance, such as this lesser-included instruction, can't be reached? That you forfeited them? Well, again, it depends on the type of issue. If it's something that, if it's out-of-record material, then it could be raised in a PC, even if it was never raised in a direct appeal. But, you know, given the state of Illinois law, defendants are pretty much stuck in a catch-22 situation. If they raise it on direct appeal but are told, oh, the record's not enough to validate your claims, they lose that. But if they don't raise it on direct appeal and then raise it in the PC, they say, oh, you should have raised this on PC, so it's now res judicata. It's like they can't win. Oh, I appreciate that. Thank you. Thank you, Mr. Kira. Thank you both for your arguments here today. This matter will be taken under advisement, and a written decision will be issued to you as soon as possible. And as stated previously, Justice Litton will be participating in the decision as a full panel member. And right now we'll just take a brief recess for panel change. All right.